**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>S.C. Beach Partnership, LLC,<br><br>Debtor. | Case No. 22-03258-EG<br><br>Chapter 11 |

**FINAL REPORT, REPORT OF SUBSTANTIAL CONSUMMATION,
AND APPLICATION FOR A FINAL DECREE CLOSING THE CASE**

S.C. Beach Partnership, LLC ("**SCBP**"), the debtor-in-possession in this Chapter 11 case, provides the below Final Report and Report of Substantial Consummation, and applies to the Court for entry of a Final Decree closing this case.

**I. FINAL REPORT**

SCBP closed the sale of 159 condominiums (the "**Condominiums**") formerly under the Yachtsman Resort Timeshare Plan, providing the source of payment of expenses, SCBP's creditors and a shared distribution to co-owners in good standing with The Yachtsman Resort Interval Owners Association, Inc. (the "**IOA**"). The sale was made pursuant to the Order Authorizing the Sale of Condominiums Formerly in the Yachtsman Resort Timeshare Plan, Free and Clear of Liens, Claims, Encumbrances and Other Interests (Except for Easements, Leases, Covenants and Restrictions of Record for the Property) Pursuant to 11 U.S.C. §§ 363(b)(1) and (f) to Hybridge Capital Management, LLC, and Granting Related Relief (the "**Sale Order**") entered on October 20, 2023 [ECF No. 181]. The sale price was $12,750,000.00 plus one-half of the Two Percent

1

Transaction Fee due (*i.e.*, $127,500.00)[1] due to Ten-X, LLC, the Auctioneer employed in this case, for a total sale price of $12,989,000.00. The closing of the sale occurred on February 2, 2024. SCBP filed its Report of Sale (the "**Report of Sale**") on February 7, 2024 [ECF No. ___].

At the closing of the sale, the sale proceeds were used to pay closing costs, the inchoate secured claim of Horry County, South Carolina for *ad valorem* taxes due on the Condominiums for the period of January 1, 2024 through January 30, 2024, the expenses incurred by SCBP in this case (court filing fees, payments to the United States Trustee, and expenses for service of process), and the fees and expenses of SCBP's attorney as approved by Orders of this Court, or currently pending for approval. After these payments, the remainder of the sale proceeds, in the amount of $10,877,262.99, were turned over to the IOA, for it to distribute the funds to the co-owners in good standing[2] in accordance with S.C. Code § 27-32-520. From the sale proceeds, **SCBP received $5,539,225.00 from the distribution for the tenant in common (formerly timeshare) interests it owned in the property.**

SCBP has used, or will use, the funds it received from the distribution of sale proceeds to make payments as provided in its Chapter 11 Plan of Reorganization filed on March 21, 2023 [ECF No. 34], which was confirmed by the Order Approving Disclosure Statement and Confirming Plan entered on May 2, 2023. Specifically, (1) SCBP has paid all administrative expenses incurred in this case, other than the fees due to the United States Trustee ("**UST**") for the 4th Quarter 2023 and the 1st Quarter 2024 which have not yet been billed to SCBP,[3] (2) it will pay

---

[1] The Two Percent Transaction Fee due to Ten-X, LLC, as Auctioneer, was in the total amount of $255,000.00. One half of this fee was $127,500.00, or One Percent of the sale price. The other half of the Transaction Fee, in the amount of $127,500.00, was paid from the sale proceeds at closing.

[2] The co-owners in good standing are those former timeshare owners, who became owners of tenant in common interests upon the termination of the Timeshare Plan, who were current in their payment of assessments and dues to the IOA as of December 31, 2022.

[3] SCBP will contact the UST to obtain the amounts due, so as to enable payment prior to the closing of this case.

any priority claims against the estate (none currently exist), (3) it will repay the post-petition loans it obtained during this case, (4) it will fully pay its creditors, and (5) it will remit the remainder of the funds as a distribution to its owner.

The following amounts have been paid during this Chapter 11 case, in accordance with the confirmed Amended and Restated Chapter 11 Plan of Liquidation (the "**Confirmed Plan**"), and pursuant to the judgment in the Adversary Proceeding. The below stated amounts include some payments that are expected to be made but not yet made.[4] Notably, the below listed amounts paid to Maynard Nexsen PC, Ten-X, LLC and Hodges Ward Elliott, LLC, were paid from the gross sale proceeds of the Condominiums, at the closing of the sale, and not from SCBP's share of the sale proceeds, *i.e.*, they were not paid from assets of the estate (except in so far as the payments from the gross sale proceeds reduced SCBP's share of the net proceeds distributed to the co-owners of the Condominiums). The amounts are as follows:

### A. Expenses of Administration:

| | |
|---|---|
| United States Trustee Fees (est.) | $ 58,088.00[5] |
| Bankruptcy Counsel (Maynard Nexsen PC, Successor by Merger to Nexsen Pruet, LLC) **(Not paid from the estate; paid from the sale proceeds as a cost of sale.)** | $ 601,909.31[6] |
| Accountant (None) | $ 0.00 |

---

[4] For example, the legal fees and expenses of SCBP's attorney, Maynard Nexsen PC (successor by merger to Nexsen Pruet, LLC), include $214,839.72 in its final fee and expense application filed on January 30, 2024 [ECF No. 208], which final amount requires Court approval for payment. The portion of the fees and expenses received for amounts in the pending application are being held in trust, pending entry of an Order on the application.

[5] This amount includes $54,765.00 for the 1st Quarter 2024.

[6] This amount consists of $387,069.59 for fees and expenses approved by Order entered on September 1, 2023 [ECF No. 153] for the period of November 29, 2022 through July 20, 2023 (including the prepetition retainer of $33,262.00), and $214,839.72 for the period of July 21, 2023 through the closing of this case sought in the application filed on January 30, 2024 [ECF No. 207], which latter amount is still pending approval. These fees and expenses were not paid from SCBP's estate, but were paid from the gross sale proceeds of the Condominiums as a cost of sale, pursuant to the judgment in Adversary Proceeding No. 23-80003-EG and Orders of the Court.

3

|  |  |
|---|---|
| Repayment of Debtor-in-Possession Loan (Holiday Property Partners, LLC) | $ 560,473.15 |
| The Yachtsman Resort Interval Owners Association, Inc. (post-petition dues and assessments) | $ 508,443.12[7] |
| Auctioneer (Ten-X, LLC) **(Not paid from the estate; paid from the sale proceeds of the Condominiums as a cost of sale.)** | $ 255,000.00 |
| Broker (Hodges Ward Elliott, LLC) **(Not paid from the estate; paid from the sale proceeds of the Condominiums as a cost of sale.)** | $ 235,875.00 |
| Insurance | $ 0.00 |
| Closing Costs Paid at Closing of Sale of the Former Timeshare Condominiums | $ 0.00[8] |
| Other Administrative Expenses[9] | $ 105,397.00 |

**B. Payments to Secured Creditors:**

| Horry County, South Carolina | $ 0.00[10] |
|---|---|

**C. Payments to Unsecured Priority Creditors:**

| Not applicable. | $ 0.00 |
|---|---|

---

[7] This payment covered the post-petition dues and assessments accrued on the former timeshare condominiums during the case, through the closing of the sale of the condominiums.

[8] SCBP paid none of the closing costs of the sale of the Condominiums. All closing costs were paid from the gross sale proceeds of the Condominiums, and not from SCBP's share of the sale proceeds, as costs of all owners necessary for the sale of the Condominiums and the realization of value for their interests. Closing costs, which were due from all co-owners of the Condominiums collectively, paid at closing totaled $1,256,140.86. This amount includes the Broker and Auctioneer fees, legal fees and expenses, title examination costs and the 2024 prorated portion of estimated 2024 *ad valorem* taxes credited to the Buyer.

[9] All administrative expenses are set forth in the Monthly Operating Reports filed by SCBP with the Court during this case.

[10] The *ad valorem* taxes due on the property were the obligation of the IOA. The taxes were paid from the gross sale proceeds of the Condominiums. At closing, $259,480.11 was paid to Horry County for 2023 property taxes, and $296,116.04 was paid to Horry County for delinquent 2022 property taxes.

**D. Non-Priority Unsecured Creditors (Class 2 of the Confirmed Plan):**

Holiday Property Partners, LLC          $ 1,600,000.00

**Total Payments for Expenses and to Creditors**
**(A + B + C + D)**          **$ 3,925,185.58**

Pursuant to the Confirmed Plan, the net sale proceeds from the closing of the sale of the Condominiums, in the amount of $10,877,262.99, was transferred to the IOA for distribution to owners in good standing with the IOA on a pro rata basis.[11] SCBP received $5,539,225.00 from the distribution for its interests in the Condominiums. Without the sale made possible by this Chapter 11 case, it is uncertain if the owners would have realized any recovery for their interests, and it appears very likely that any recovery received would have been substantially less than the recovery they received from the sale in this case.

## II. REPORT OF SUBSTANTIAL CONSUMMATION

SCBP hereby reports that the Confirmed Plan has been substantially consummated. In this regard, SCBP would show that:

1. SCBP filed its petition for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101, *et seq.*) on November 29, 2022. SCBP continued in possession and control of its property and in managing its business as the debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. At the time of the filing of this case, SCBP owned and operated 893 ownership interests in the Condominiums in the Yachtsman Resort located at 1304 N. Ocean Boulevard, Myrtle Beach, South Carolina. The Condominiums were formerly in the Yachtsman Resort Timeshare

---

[11] As the owners' association, which is given such rights and responsibility under S.C. Code § 27-32-520, the IOA made the determination of owners in good standing and calculated the distribution to each. The IOA then made the distribution to the owners in good standing.

Plan (the "**Timeshare Plan**"). The Condominiums are listed with their respective unit numbers and tax map numbers in **Exhibit A** attached to this report and application.

3.  SCBP's ownership interests in the Condominiums formerly were timeshare intervals, typically one week each. The IOA terminated the Timeshare Plan pursuant to S.C. Code Ann. § 27-32-520(C), effective February 21, 2022. Upon termination of the Timeshare Plan, the ownership interests of the timeshare owners became tenant in common ownership interests; each timeshare interest became a tenant in common ownership interest in the Condominium in which the timeshare interest had been held. Accordingly, at the filing of the case SCBP owned a total of 893 tenant in common interests in the Condominiums.

4.  S.C. Code Ann. § 27-32-520 contemplates and provides that, following termination of a timeshare plan, the property in such plan will be sold. As of the filing of this Chapter 11 case, the Timeshare Property had not been sold. For SCBP to pay its debts and meet its ongoing obligations, SCBP needed to realize the value of its ownership interests in the Condominiums.

5.  SCBP filed this Chapter 11 case for the purpose of enabling and causing the sale of the Condominiums. As an essential part of the case, SCBP filed Adversary Proceeding No. 23-80003-EG (the "**Adversary Proceeding**") alleging causes of action for partition of the Condominiums by sale under state law, and/or for the sale of the Condominiums as co-owned property under 11 U.S.C. § 363(h).[12] The Court granted judgment for SCBP on its causes of action in the Adversary Proceeding, ordering partition of the Condominiums by sale, and also authorizing

---

[12] The Yachtsman Resort includes a total of 160 residential condominiums, comprising the second through the eleventh floors of the North Yachtsman Tower and the South Yachtsman Tower. SCBP did not own an interest in one of the condominium units, Unit N202 (Unit 202 in the North Yachtsman Tower), and thus SCBP did not include Unit N202 in the Adversary Proceeding or in the sale of the Condominiums. The Yachtsman Resort property also includes four commercial condominium units on the first floor of the two towers, which are not included in this case or in the sale of the Condominiums.

6

their sale as co-owned property under 11 U.S.C. § 363(h). By this judgment, SCBP was able to offer the Condominiums for sale, for the benefit of SCBP, the IOA and the other owners.

6. The Confirmed Plan incorporates the sale of the Condominiums as provided in the judgement in the Adversary Proceeding, with specific authorization for the sale to be provided in an order upon a motion under 11 U.S.C. § 363(b)(1). The judgement in the Adversary Proceeding enabled the sale of the Condominiums; authorization for the sale to an identified buyer at an approved sale price was to be obtained by motion.

7. SCBP first attempted to arrange a sale by public auction. On July 12, 2023, SCBP filed a motion [ECF No. 92] seeking authorization for a sale pursuant to 11 U.S.C. §§ 363(b)(1) and (f), by an online auction. The motion provided that the auction would be preceded by a coordinated marketing program by Hodges Ward Elliott, LLC ("**HWE**") as Broker, and Ten-X, LLC ("**Ten-X**") as auctioneer, and Ten-X would conduct the auction on August 21 – 23, 2023.[13] Also on July 12, 2023, SCBP filed a motion [ECF No. 94] to establish bidding procedures and requirements, and certain bidder protection, for the sale, and on August 4, 2023, the Court entered an Order granting such relief [ECF No. 119] (the "**Bidding Procedures Order**")

8. The auction occurred as scheduled, and the prevailing bidder at the auction, Sam Patel, bid $14.1 million. The next highest bid was made by Hybridge Capital at $14 million; upon learning it had been outbid, Hybridge Capital declined to serve as a back-up bidder under contract. Sam Patel, the prevailing bidder, failed and refused to sign the required Asset Purchase Agreement and to pay his earnest money deposit. Therefore, the sale failed. On September 5, 2023, the Court entered its Order [ECF No. 158] denying the sale motion filed on July 12, 2023.[14]

---

[13] HWE's employment and Ten-X's employment were authorized by Orders entered on July 29, 2023 [ECF Nos. 88 and 89].

[14] SCBP has not yet determined whether it will file action against Mr. Patel. Mr. Patel forfeited his $25,000.00 participant's deposit for the auction, which he maintains is the limit of his liability for not proceeding

7

9. Following the failed auction sale, HWE and Ten-X contacted potential buyers who had expressed interest in the property prior to the auction, including bidders who participated in the auction, to solicit new offers for the Condominiums. SCBP and Hybridge Capital ultimately agreed to Hybridge Capital's purchase of the property for the sale price of $12,750,000.00 plus payment of one-half of the Two Percent Transaction Fee due to Ten-X (*i.e.*, $127,500.00).[15]

10. The sale of the Condominiums to Hybridge Capital closed on February 1 – 2, 2024. SCBP filed its Report of Sale on February 7, 2024 [ECF No. 210].

11. As shown and itemized in the Report of Sale, the total sale price was $12,989,000.00. The closing costs paid at closing totaled $1,256,140.86. In addition, Horry County, South Carolina received payments of $259,480.11 for 2023 *ad valorem* taxes due on the Condominiums, and $296,116.04 for delinquent 2022 *ad valorem* taxes on the property. As also shown in the Report of Sale, from the sale proceeds at closing (a) the legal fees and costs incurred by SCBP in the Chapter 11 case and in the Adversary Proceeding (i) were paid to Maynard Nexsen PC in the amount of $353,807.59 for fees and expenses already approved by the Court ($387,069.59 less the prepetition retainer of $33,262.00), and (ii) $214,839.72 for fees and expenses for which approval was pending as of the date of the closing, which funds were placed in the firm's trust account pending entry of an Order upon the Maynard Nexsen's final fee application; (b) SCBP received reimbursement of the $35,000.00 prepetition retainer[16] it paid to its legal counsel for the Chapter 11 case; (c) Alexander Krakovsky, Manager of SCBP, received $64,243.56 as reimbursement for the costs he personally paid to serve filings an notices on the co-owners of the Condominiums

---

with the purchase pursuant to his prevailing bid, but SCBP maintains that the Seller's damages are substantially greater than the participant's deposit, and that neither it nor the IOA released Mr. Patel or limited his liability in any way.

[15] The other one-half of the Transaction Fee (*i.e.*, the other $127,500.00) was paid by the Seller from the sale proceeds.

[16] The $35,000.00 retainer was reduced by the case filing fee of $1,738.00, so the Maynard Nexsen's retainer in the case was $33,262.00.

(over 7,200 persons) as necessary expenses to enable the sale of the Condominiums; (d) $19,314.99 was credited to the Buyer as the prorated portion of the 2024 *ad valorem* taxes for the period through the closing of the sale; and (e) other closing expenses (title examination, the closing attorney's fees and expenses, and report costs) which were not incurred or arranged by SCBP were paid. The net amount to Seller from the closing was $11,177,262.99. These funds were delivered to the IOA for payment of its expenses and distribution to the owners in good standing with the IOA.

12. SCBP received its pro rata share of the sale proceeds, as an owner in good standing. Specifically, SCBP received $5,539,225.00.

13. From the distribution SCBP received for its ownership interests in the Condominiums, SCBP has paid: (a) Holiday Property Partners, LLC in the amount of $560,473.15 for satisfaction of the post-petition loans it made to SCBP;[17] (b) all administrative expenses of the case, except for (i) the final fees and expenses of its attorneys, for which a fee application is pending, and which amount is to be paid from sale proceeds[18] held in Maynard Nexsen's trust account (subject to Court authorization), and (ii) the amount due to the United States Trustee ("**UST**") for the Fourth Quarter of 2023 and for the First Quarter of 2024; and (c) $1,600,000.00 to non-priority unsecured creditors for prepetition indebtedness owed to them. SCBP will send payment to the UST in the amount calculated by the UST on or about the time of the filing of this document, based upon the disbursements stated above.

---

[17] Pursuant to Orders entered on December 22, 2022 [ECF No. 16], on January 6, 2023 [ECF No. 21] and on May 22, 2023 [ECF No. 65], SCBP was authorized to obtain post-petition loans from Holiday Property Partners, LLC, secured by a first priority security interest and lien on SCBP's assets and having superpriority administrative expense status. These loans were necessary to fund SCBP's administrative expenses pending a sale of the Condominiums.

[18] The sale proceeds held in trust by Maynard Nexsen for the fees and expenses in its pending application are not from SCBP's share of the sale proceeds, but are from the gross sale proceeds before distributions to owners.

9

14,    The balance of the funds after payment of the expenses and debt described in the preceding paragraph 13, which comprised all debt owed by SCBP, was remitted to Holiday Property Partners, LLC, as the sole owner of SCBP.

15.    Nothing remains for SCBP to do under the Confirmed Plan, other than close this case.

16.    The Confirmed Plan has been substantially consummated within the meaning of 11 U.S.C. § 1101(2). In fact, the Confirmed Plan has been fully consummated.

### III. APPLICATION FOR ENTRY OF A FINAL DECREE

Rule 3022 of the Federal Rules of Bankruptcy Procedure provides that, "After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

The determination of when a case has been fully administered will vary from case to case, depending on numerous factors. *See 9 Collier on Bankruptcy* ¶ 3022.01, page 3022-2 (7th ed. 2015); *In re Omega Optical, Inc.*, 476 B.R. 157 (Bankr. E.D. Pa. 2012); and 1991 Advisory Committee Note to Rule 3022, Fed. R. Bankr. P. The requirement that the estate be "fully administered" to close the case does not mean that everything to be done under the plan has been completed. *In re Jay Bee Enterprises, Inc.*, 207 B.R. 536, 538-39 (Bankr. E.D. Ky. 1997); *In re Beechknoll Nursing Homes, Inc.*, 202 B.R. 260, 261 (Bankr. S.D. Ohio 1996); and *In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990). In this case, however, everything to be done under the Confirmed Plan has been completed.[19]

---

[19] SCBP has not yet paid the final fees and expenses of its attorney, but only because the attorney's fee application is pending (as of the filing of this document), and funds to cover the amount requested (in such amount as approved by the Court) have been reserved to cover the payment following the Court's ruling on the application.

In this case, the Confirmed Plan has been fully consummated and nothing remains to be done under it, other than close the case. The entry of a final decree closing the case is proper at this time.

WHEREFORE, for the reasons stated above, SCBP prays that the Court enter a final decree closing this case at this time.

February 12, 2024

s/ Julio E. Mendoza, Jr.
Julio E. Mendoza, Jr., Court ID No. 3365
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Box 2426
Columbia, South Carolina 29202
Telephone: 803-540-2026
Email: rmendoza@nexsenpruet.com

*Attorneys for S.C. Beach Partnership, LLC*

# EXHIBIT A

**List of the Condominiums with the Unit Number and
The Tax Map Number of Each**

## UNIT NUMBERS[20]

| Unit | TMS# | Unit | TMS# |
| --- | --- | --- | --- |
| N1000 | 181-07-24-071 | N305 | 181-07-24-020 |
| N1001 | 181-07-24-072 | N306 | 181-07-24-021 |
| N1002 | 181-07-24-073 | N307 | 181-07-24-022 |
| N1003 | 181-07-24-074 | N400 | 181-07-24-023 |
| N1004 | 181-07-24-075 | N401 | 181-07-24-024 |
| N1005 | 181-07-24-076 | N402 | 181-07-24-025 |
| N1006 | 181-07-24-077 | N403 | 181-07-24-026 |
| N1007 | 181-07-24-078 | N404 | 181-07-24-027 |
| N1100 | 181-07-24-079 | N405 | 181-07-24-028 |
| N1101 | 181-07-24-080 | N406 | 181-07-24-029 |
| N1102 | 181-07-24-081 | N407 | 181-07-24-030 |
| N1103 | 181-07-24-082 | N500 | 181-07-24-031 |
| N1104 | 181-07-24-083 | N501 | 181-07-24-032 |
| N1105 | 181-07-24-084 | N502 | 181-07-24-033 |
| N1106 | 181-07-24-085 | N503 | 181-07-24-034 |
| N1107 | 181-07-24-086 | N504 | 181-07-24-035 |
| N200 | 181-07-24-007 | N505 | 181-07-24-036 |
| N201 | 181-07-24-008 | N506 | 181-07-24-037 |
| N203 | 181-07-24-010 | N507 | 181-07-24-038 |
| N204 | 181-07-24-011 | N600 | 181-07-24-039 |
| N205 | 181-07-24-012 | N601 | 181-07-24-040 |
| N206 | 181-07-24-013 | N602 | 181-07-24-041 |
| N207 | 181-07-24-014 | N603 | 181-07-24-042 |
| N300 | 181-07-24-015 | N604 | 181-07-24-043 |
| N301 | 181-07-24-016 | N605 | 181-07-24-044 |
| N302 | 181-07-24-017 | N606 | 181-07-24-045 |
| N303 | 181-07-24-018 | N607 | 181-07-24-046 |
| N304 | 181-07-24-019 | | |
| N700 | 181-07-24-047 | S1107 | 181-07-40-080 |
| N701 | 181-07-24-048 | S200 | 181-07-40-001 |
| N702 | 181-07-24-049 | S201 | 181-07-40-002 |
| N703 | 181-07-24-050 | S202 | 181-07-40-003 |

---

[20] The designation "N" means that the unit is in the North Tower, and the designation "S" means that the unit is in the South Tower.

13

| | | | |
|---|---|---|---|
| N704 | 181-07-24-051 | S203 | 181-07-40-004 |
| N705 | 181-07-24-052 | S204 | 181-07-40-005 |
| N706 | 181-07-24-053 | S205 | 181-07-40-006 |
| N707 | 181-07-24-054 | S206 | 181-07-40-007 |
| N800 | 181-07-24-055 | S207 | 181-07-40-008 |
| N801 | 181-07-24-056 | S300 | 181-07-40-009 |
| N802 | 181-07-24-057 | S301 | 181-07-40-010 |
| N803 | 181-07-24-058 | S302 | 181-07-40-011 |
| N804 | 181-07-24-059 | S303 | 181-07-40-012 |
| N805 | 181-07-24-060 | S304 | 181-07-40-013 |
| N806 | 181-07-24-061 | S305 | 181-07-40-014 |
| N807 | 181-07-24-062 | S306 | 181-07-40-015 |
| N900 | 181-07-24-063 | S307 | 181-07-40-016 |
| N901 | 181-07-24-064 | S400 | 181-07-40-017 |
| N902 | 181-07-24-065 | S401 | 181-07-40-018 |
| N903 | 181-07-24-066 | S402 | 181-07-40-019 |
| N904 | 181-07-24-067 | S403A | 181-07-40-020 |
| N905 | 181-07-24-068 | S403B | 181-07-40-021 |
| N906 | 181-07-24-069 | S404 | 181-07-40-022 |
| N907 | 181-07-24-070 | S405 | 181-07-40-023 |
| S1000 | 181-07-40-065 | S406 | 181-07-40-024 |
| S1001 | 181-07-40-066 | S500 | 181-07-40-025 |
| S1002 | 181-07-40-067 | S501 | 181-07-40-026 |
| S1003 | 181-07-40-068 | S502 | 181-07-40-027 |
| S1004 | 181-07-40-069 | S503A | 181-07-40-028 |
| S1005 | 181-07-40-070 | S503B | 181-07-40-029 |
| S1006 | 181-07-40-071 | S504 | 181-07-40-030 |
| S1007 | 181-07-40-072 | S505 | 181-07-40-031 |
| S1100 | 181-07-40-073 | S506 | 181-07-40-032 |
| S1101 | 181-07-40-074 | S600 | 181-07-40-033 |
| S1102 | 181-07-40-075 | S601 | 181-07-40-034 |
| S1103 | 181-07-40-076 | S602 | 181-07-40-035 |
| S1104 | 181-07-40-077 | S603A | 181-07-40-036 |
| S1105 | 181-07-40-078 | S603B | 181-07-40-037 |
| S1106 | 181-07-40-079 | S604 | 181-07-40-038 |
| S605 | 181-07-40-039 | | |
| S606 | 181-07-40-040 | | |
| S700 | 181-07-40-041 | | |
| S701 | 181-07-40-042 | | |

14

| | |
|---|---|
| S702 | 181-07-40-043 |
| S703A | 181-07-40-044 |
| S703B | 181-07-40-045 |
| S704 | 181-07-40-046 |
| S705 | 181-07-40-047 |
| S706 | 181-07-40-048 |
| S800 | 181-07-40-049 |
| S801 | 181-07-40-050 |
| S802 | 181-07-40-051 |
| S803A | 181-07-40-052 |
| S803B | 181-07-40-053 |
| S804 | 181-07-40-054 |
| S805 | 181-07-40-055 |
| S806 | 181-07-40-056 |
| S900 | 181-07-40-057 |
| S901 | 181-07-40-058 |
| S902 | 181-07-40-059 |
| S903A | 181-07-40-060 |
| S903B | 181-07-40-061 |
| S904 | 181-07-40-062 |
| S905 | 181-07-40-063 |
| S906 | 181-07-40-064 |

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>S.C. Beach Partnership, LLC,<br><br>Debtor. | Case No. 22-03258-EG<br><br>Chapter 11<br><br>**CERTIFICATE OF SERVICE** |

I, Julio E. Mendoza, Jr. of Maynard Nexsen PC, do hereby certify that copies of the foregoing <u>Final Report, Report of Substantial Consummation, and Application for a Final Decree Closing the Case</u> were served upon the parties listed on <u>Exhibit "A"</u> attached hereto, by electronic notification through the Court's ECF/NEF System (as applicable) at the time of filing on February 12, 2024, and/or by U.S. Mail, postage prepaid on the 12th day of February, 2024, at Columbia, South Carolina.

 

February 12, 2024

Columbia, South Carolina

/s/ Julio E. Mendoza, Jr.
Julio E. Mendoza, Jr. (#3365)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700 (29201)
Post Office Box 2426
Columbia, South Carolina 29202
Phone: (803) 771-8900
Email: rmendoza@maynardnexsen.com

*Attorneys for SC Beach Partnership, LLC*

16

# EXHIBIT "A"

| | | |
|---|---|---|
| HOLIDAY PROPERTY PARTNERS, LLC<br>189 KENTLANDS BLVD.<br>GAITHERSBURG MD 20878-5454 | Christine E Brimm, Esq.<br>Barton Brimm, PA<br>P.O. Box 14805<br>Myrtle Beach, SC 29587-4805 | Linda Barr  (BY ECF ONLY)<br>Office of United States Trustee<br>1835 Assembly Street<br>Suite 953<br>Columbia, SC 29201-2448 |
| INTERNAL REVENUE SERVICE<br>CENTRALIZED INSOLVENCY<br>OPERATION<br>PO BOX 7346<br>PHILADELPHIA PA 19101-7346 | HORRY COUNTY TREASURER'S OFFICE<br>PO BOX 1237<br>CONWAY SC 29528-1237 | HPP PROPERTY SERVICES, LLC<br>7512 DOCTOR PHILLIPS BLVD<br>SUITE 50-365<br>ORLANDO FL 32819-5420 |
| James C. Moon, Esq.<br>Meland Budwick P.A.<br>3200 Southeast Financial<br>Center, 200 South Biscayne Blvd.<br>Miami, FL 33131-5340 | YACHTSMAN INTERVAL OWNERS<br>ASSOCIATION, INC.<br>1304 NORTH OCEAN BLVD.<br>MYRTLE BEACH SC 29577-3759 | S.C. DEPARTMENT OF REVENUE OFFICE OF<br>GENERAL COUNSEL<br>300A OUTLET POINTE BOULEVARD<br>COLUMBIA SC 29210-5666 |
| Michael Beal, Esq.<br>BEAL LLC<br>PO Box 11277<br>Columbia, SC 29211 | Kevin K Kercher<br>881 Third Street<br>STE C-2<br>Whitehall, PA 18052-5930 | Benjamin R. Matthews, Esq.<br>Benjamin R. Matthews & Associates<br>2010 Gadsden St<br>Columbia, SC 29201-2033 |
| | | Aaron J. Powers, Esq.<br>PORTER HEDGES LLP<br>1000 Main Street, 36th Floor<br>Houston, TX 77002 |